UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SECURITY WATCH ALERT TEAM, LLC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:17-cv-00003-SEB-MPB ) |
| | ) ) |
| CURTIS T. HILL, JR., in his official capacity as Indiana Attorney General, DEREK R. PETERSON, ED HUTCHISON, | ) ) ) ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Curtis T. Hill Jr., in his official capacity as Indiana Attorney General, Derek R. Peterson and Ed Hutchison, by counsel, Mollie A. Slinker, Deputy Attorney General, reply in support of *Defendants' Motion for Summary Judgment* (Dkt. 87), and respectfully request the Court to grant summary judgment for the Defendants on all claims. In support of their Motion, Defendants state as follows.

    **I.**    **Plaintiff has waived its claim for injunctive relief against Attorney General Hill and its Section 1983 claim against Derek R. Peterson**

The remaining claims against State Defendants were (1) a 42 U.S.C. § 1983 claim against Derek R. Peterson; (2) a 42 U.S.C. § 1983 claim against Ed Hutchison; and (3) a claim for injunctive relief against Attorney General Hill. (*See* Dkt. 54.) Plaintiff did not provide nor develop any argument against State Defendant's assertion that he is entitled to summary judgment on the claim for injunctive relief against Attorney General Hill, and by failing to

1

develop such argument, he waives it. *See Wehrs v. Wells,* 688 F.3d 886, 891 n.2 (7th Cir. 2012) (undeveloped and unsupported arguments waived); *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012) (undeveloped arguments and arguments unsupported by relevant authority waived). As Plaintiff fails to contest this issue, summary judgment as to the claim for injunctive relief against Attorney General Hill should be entered on behalf of State Defendants.

Similarly, Plaintiff does not include any evidentiary support for the allegations against Peterson. (Dkt. 92-11, p. 5.) As such, these claims are also waived. Plaintiff bases its Section 1983 claim on the alleged defamatory communications between Defendants, Hutchison and Peterson, and SWAT's clients. (Dkt. 92-11, p. 6.) However, Plaintiff has not introduced any evidence which shows that Peterson contacted any clients of SWAT. (*See* Dkt. 92-11.) The undisputed evidence shows that Peterson's involvement was limited to his role as the Deputy Attorney General assigned to prosecute the underlying licensing enforcement matter. (*See* Dkt. 87-1, 87-3, 87-4.) As detailed in the Defendants' Brief in Support of Motion for Summary Judgment, Peterson is entitled to absolute immunity for the filing and litigation of complaints before the Indiana and Private Investigator and Security Guard Licensing Board ("Board"), as these actions are firmly within the scope of his role as prosecuting attorney in the licensing enforcement action. See *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) (internal citations omitted) (Officials are entitled to absolute immunity "when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action."); *Butz v. Economou,* 438 U.S. 478 (1978) ("The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution."). For these reasons, summary judgment should be entered on behalf of Peterson as to all claims against him.

## II. Objections

a) **Plaintiff's Statement of Material Facts in Dispute**

Plaintiff has failed to show that there is a genuine dispute as to any material fact. To survive summary judgment, a nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of material fact exists only if the resolution of the factual issue might affect the outcome of the suit. *Id*. at 248. A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

Plaintiff asserts the following facts as being in dispute. For the reasons set forth below, these facts are both unsupported by admissible evidence and immaterial. Thus, as there are no material facts in dispute, State Defendants are entitled to summary judgment as a matter of law.

> i. *"Ed Hutchison and Derek Peterson acted outside the scope of their employment by informing SWAT's customers that SWAT was no longer licensed to provide security services."* (Dkt. 92-11, p. 2.)

In support of this statement of fact, Plaintiff cites to Ed Hutchison's deposition testimony in which Hutchison states that "it would be a licensing violation for a property management company to do business with a suspended license." (Hutchison Dep. 25:25-26:2; Dkt. 92-11, p. 2.) This testimony alone does not support Plaintiff's contention that Hutchison and Peterson acted outside the scope of their employment by informing SWAT's customers that SWAT's license was suspended. First, Plaintiff cites to no evidence showing that Peterson ever contacted

a client of SWAT. Second, even if Plaintiff could show that both Peterson and Hutchison contacted SWAT's clients, Plaintiff has not provided any support which would lead a reasonable jury to believe that Defendants acted outside the scope of their employment.

> ii. *"Hutchison informed SWAT customers that SWAT was an immediate threat to public health and safety, when no such threat was determined."* (Dkt. 92-11, p. 2.)

To support this statement, Plaintiff cites to Hutchison's testimony stating that he notified certain clients of SWAT that "their service provider had been ruled to be an immediate threat to public health and safety." (Hutchison Dep. 26:7-9.) Additionally, Plaintiff cites to the proposed settlement agreement which was signed by representatives of SWAT, Arthur Small and Kenneth Heiny, entitled "Proposed Findings of Facts, Conclusions of Law and Order." (Dkt. 87-4.) However, Plaintiff's statement that there was never a determination that SWAT posed a threat to public health and safety is unfounded. Contrary to Plaintiff's contention, in the Order for Summary Suspension, the Board explicitly found that "an emergency exists and that [SWAT] represents a clear and immediate danger to the public health, safety, and/or property if Respondent were allowed to continue to practice as a security guard agency in the State of Indiana." (Dkt. 87-2, p. 1.) Thus, there is no dispute of material fact as to the Board's finding in its Order for Summary Suspension. (*See* Dkt. 87-2.)

> iii. *"SWAT, subsequent to entering in to a settlement agreement to revoke its IPLA license, rescinded this settlement by way of correspondence, and actions."* (Dkt. 92-11, p. 2.)

Plaintiff does not cite to any evidence to support this statement of fact. The Court may disregard statements and responses that do not properly cite to the record. Fed.R.Civ.P. 56(e)(2).

Further, there is no admissible evidence in the record which substantiates that SWAT submitted any correspondence to the Office of the Indiana Attorney General or the Board regarding their desire to rescind their settlement. There is also no evidence that Plaintiff took any actions to rescind the proposed settlement.

Nonetheless, this fact is immaterial to the legal issues at hand. The proposed settlement is relevant as to the claim for injunctive relief against Attorney General Hill under *Ex parte Young*. However, the proposed settlement is not determinative because Art Small's testimony has demonstrated that SWAT is no longer conducting business as a security guard agency. (SWAT Dep. 15:7-13; 69:5-12; Dkt. 87-5.) Either way, this claim has been waived and is no longer at issue.

> iv.  *"SWAT, by counsel, acted to rescind the Settlement Agreement and, after rescinding the Settlement Agreement, refused to pay the civil penalty detailed therein."* (Dkt. 92-11, p. 2.)

To support this fact, Plaintiff cites to the Affidavit of Art Small which states that "[o]n March 3, 2016, I rescinded the Settlement Agreement. (A copy of this letter is attached hereto as Exhibit "F")." (Dkt. 92-1, p. 2.) Plaintiff attempts to create an issue of fact by introducing new evidence, not previously disclosed. The letter, labelled as Exhibit F, was not disclosed pursuant to Federal Rules of Civil Procedure 26(a) or 26(e). Further, Small, as the 30(b)(6) representative, never discussed rescinding the proposed settlement in the 30(b)(6) deposition. Additionally, this letter alone does not support the factual contention that Plaintiff rescinded the proposed settlement by way of correspondence and actions. There is no evidence that Plaintiff or the recipient of the letter forwarded this to the Office of the Indiana Attorney General or the Board. As the letter cannot be authenticated, it should be stricken from the record. Finally, as discussed

above, this fact is immaterial to the remaining legal issues. Therefore, it should be disregarded when considering State Defendants' Motion for Summary Judgment.

### b) Plaintiff's Designated Materials

A court may consider only admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citing *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 533 (7th Cir.2003). As discussed below, Plaintiff attempts to rely on inadmissible evidence in its Response. Such evidence be stricken from the record.

### i. *Letter entitled "Notice to Rescind Settlement Agreement, Exhibit F* (Dkt. 92-7.)

To support Plaintiff's statement that it rescinded the proposed settlement, Plaintiff includes Exhibit F. Exhibit F consists of a letter addressed to Myron Rahn III, a nonparty to this case. Defendants object to this letter as it was never disclosed pursuant to Federal Rules of Civil Procedure 26(a) or 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. State Defendants were unable to conduct discovery to determine whether the letter was sent to the Office of the Indiana Attorney General or the Board. For the foregoing reasons, the letter (Dkt. 92-7) should be exluded.

### ii. *Ed Hutchison's Deposition Testimony, 16:22-17:1* (Dkt. 92-11, p. 8; Dkt. 92-10, pp. 5-6.)

Plaintiff cites to Hutchison's deposition testimony to support its argument that Indiana statute "would preclude a video only company from being licensed as a security guard agency." (*See* Dkt. 92-11, pp. 8.) However, Plaintiff misstates Hutchison's testimony. Hutchison, based on

his experience as an investigator for the Office of the Indiana Attorney General, states that he has "never investigated a company that solely offered live video monitoring services." (Hutchison Dep. 16: 19-21." He further speculates as to the requirements of the statute. (*See* Hutchison Dep. 16:21-22) ("It is my informed speculation that…"). Hutchison was never qualified as a legal expert and does not purport to be one. Defense counsel objected to the Plaintiff's question at the deposition as it calls for a legal conclusion and misstates Hutchison's prior testimony. (Hutchison Dep. 16:16-18.) As a result, Hutchison's testimony regarding the statutory licensing requirements for video monitoring services is inadmissible under Federal Rules of Evidence 602 and 701.

### III.   Argument

a) **Hutchison is entitled to qualified immunity**

As an investigator for the Office of the Indiana Attorney General, Hutchison is entitled to qualified immunity. *See Bianchi v. McQueen*, 818 F.3d 309, 316–17 (7th Cir. 2016). There is a two pronged test to determine whether an individual is entitled to qualified immunity: (i) whether the allegations sufficiently allege that plaintiff has been deprived of a constitutional right; and (ii) whether the right at issue was sufficiently clear at the time the defendant performed the alleged misconduct. *Pearson v. Callahan,* 129 S. Ct 808, 815 (2009).  In its Response, Plaintiff disputes that Hutchison is entitled to the immunity afforded under Indiana Tort Claims Act ("ITCA"), Indiana Code Section 34-13-3. However, Plaintiff does not address common law qualified immunity. While the ITCA provides for immunity against state law tort claims specifically, common law qualified immunity shields Hutchison from suit as to the remainder of Plaintiff's claims.

In an attempt to refute immunity, Plaintiff argues that Hutchison acted outside the scope of his employment and maliciously interfered with SWAT's business. (Dkt. 92-11, p. 5.) While these are relevant considerations for the immunity under the ITCA, they are not applicable to the two-part qualified immunity analysis. *See* Ind. Code § 34-13-3-5(c) (A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton; or calculated to benefit the employee personally). Following the Supreme Court's decision in *Harlow v. Fitzgerald*, subjective motivations, such as malice, will not defeat qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S. Ct. 2727, 2737, 73 L. Ed. 2d 396 (1982). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id*. at 817-18 (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). Therefore, when determining whether an official is entitled to qualified immunity, the Court will instead limit its consideration to the objective reasonableness of an official's conduct. *Id*. at 818. Therefore, because Hutchison's conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known, he is not subject to liability for his actions taken as an investigator in the licensing enforcement action.

### i.   Plaintiff has not established a deprivation of a constitutional right.

Plaintiff is unable to show that it suffered a constitutional deprivation. "[M]ere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hinkle v. White*, 793 F.3d 764, 767–68 (7th Cir. 2015) *(quoting Hojnacki v. Klein–Acosta,* 285 F.3d 544, 548 (7th Cir. 2002)). Instead, courts "conduct a 'stigma-plus' analysis to determine whether there

was an injury to reputation *along* with a change in legal status." *Id*. at 786 (quoting *Somerset House, Inc. v. Turnock,* 900 F.2d 1012, 1015 (7th Cir. 1990)). In other words, "it is only the 'alteration of legal status,' such as government deprivation of a right previously held, which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards." *Id*. (internal citations omitted).

At the outset, Plaintiff cannot establish that Hutchison's statements were defamatory because they were based on the Board's findings in its Order suspending SWAT's license. (*See* Dkt. 87-2.) However, even if Plaintiff could establish that it was defamed, this alleged defamation does not arise to the level of a constitutional deprivation. In *Hinkle v. White*, Plaintiff alleged that the defendants interfered with Plaintiff's liberty interest in his occupation by spreading rumors that he had sexually abused his step-daughter and committed arson. *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015). Although the sexual abuse allegations were later unsubstantiated, the Court found that the alleged defamation did not alter the Plaintiff's legal status. *Id*. at 768. Therefore, even if the defamation seriously impaired the Plaintiff's future employment prospects, the Plaintiff could not maintain a due process claim for the denial of a liberty interest. *Id*.

Likewise, Plaintiff cannot show that Hutchison's alleged defamation altered SWAT's legal status. The alleged defamatory statements to clients occurred following the suspension of SWAT's license. (Hutchison Dep. 25:15-16.) Any statements made by Hutchison had no bearing on the suspension of SWAT's license, which was already in effect. (*See* Dkt. 87-2.) This case, along with *Hinkle*, contrasts with cases in which an alteration in legal status has been found. For example, in *Wisconsin v. Constantineau,* 400 U.S. 433 (1971), the Court found that the defendants altered the Plaintiff's legal status by posting the plaintiff's name to a list which, by

statute, removed his right to purchase alcoholic beverages. *Wisconsin v. Constantineau*, 400 U.S. 433, 435 (1971). This alteration of legal status, combined with the injury resulting from the defamation, invoked procedural safeguards. *Id*. at 433. However, Plaintiff cannot establish those elements here. Even if Plaintiff could trace the loss of their clients to Hutchison's statements, the impairment of employment prospects alone does not establish a due process claim.

    ii.    **Hutchison's conduct did not violate a clearly established statutory or constitutional right.**

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Although a case on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). It is not clearly established that the communications at issue violate the Due Process Clause.

In its Response, Plaintiff cites to only one case to support its claim under 42 U.S.C. § 1983. Plaintiff cites to *Meyer v. Nebraska*, 262 U.S. 390 (1923) in which a statute prohibiting the teaching of any subject in any language other than the English language in any school, or the teaching of languages other than the English language below the eighth grade, was held to be unconstitutional. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). While the Court in *Meyer* generally found that the liberty afforded by the Due Process Clause can include "the freedom to contract," the Court's opinion is not instructive to the facts at issue in this case. *Id*. In regards to a claim implicating one's liberty interests in his or her occupation, it is well-settled that allegations of defamation alone do not amount to a constitutional deprivation. *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015).

Plaintiff has not, and cannot, point to existing precedent that would have led Hutchison to belief that his conduct during the investigation was unconstitutional. "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Hutchison is entitled to qualified immunity for the discretional actions taken during the investigation of SWAT in the underlying licensing enforcement proceedings.

### b) Plaintiff's defamation claims are unsupported because the alleged statements made by Hutchison are true.

In Indiana, "to prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Melton v. Ousley*, 925 N.E.2d 430, 437 (Ind. Ct. App. 2010) (internal citation omitted). "To impose liability for defamation, a false statement of fact is required." *Id.* In turn, "truth is a complete defense in civil actions for defamation." *Id.*

In the Order for Summary Suspension of SWAT's security guard license, the Board found that SWAT presented a "clear and immediate danger to the public health, safety and/or property." (Dkt. 87-2.) Hutchison reached out to SWAT's clients following the issuance of the Order for Summary Suspension. (Hutchison Dep. 25:15-16.) Through these communications, Hutchison informed SWAT's clients of the Board's finding. (Hutchison Dep. 25:15-26:9.) Despite Plaintiff's contention that these statements were not based in fact, the Order issued by the Board (Dkt. 87-2) demonstrates that Hutchison's statements were true. For this reason, Plaintiff is unable to prevail on their defamation claim.

Plaintiff attempts to raise an issue as to the truth of Hutchison's statements by creating a distinction between services which are provided by a licensed security guard agency and security monitoring services. (See Dkt. 92-11, pp. 6-9.) Plaintiff argues that Hutchison failed to make a distinction between "security guard" and "video monitoring" which misled "the clientele to believe that 1. a license was required to provide video monitoring; 2. SWAT no longer held such a license." (Dkt. 92-11, p. 7.) However, Plaintiff does not provide any authority for this contention. In support of this argument, Plaintiff relies on the inadmissible testimony of Hutchison regarding a legal interpretation of a statute. See Dkt. 92-11, p. 7.) To the contrary, the Board found that it had jurisdiction over SWAT. (Dkt. 87-2, pp. 1-2.) The Board ordered SWAT to immediately cease and desist all acts, advertisements, or services constituting the practice of a security guard agency for 90 days. (Dkt. 87-2, pp. 3-4.) Accordingly, the statements which Plaintiff alleges that Hutchison made to SWAT's clients are entirely supported by the findings of the Board in its Order for Summary Suspension. (Dkt 87-2.) As a result, Plaintiff is unable to establish that Hutchison made any defamatory statements to SWAT's clients.

### c) To the extent that any state law tort claims remain, Hutchison is immune from suit pursuant to Indiana Code Section 34-13-3.

Hutchison is entitled to immunity because his purported conduct occurred wholly in the context of his employment with the Office of the Indiana Attorney General. The ITCA, Indiana Code Section 34-13-3, governs tort actions filed against state employees and entities and regulates the immunity of the state and its employees. The ITCA grants immunity for the performance of a discretionary function. Ind. Code. § 34-13-3-3(7). "The policy underlying the statute is to protect public officials in the performance of their duties by preventing harassment with threats of civil litigation over decisions they make within the scope of their positions."

12

*Martin v. Heffelfinger*, 744 N.E.2d 555, 559 (Ind. Ct. App. 2001) (citing *Bd. of Comm'rs v. King*, 481 N.E.2d 1327, 1330 (Ind. Ct. App. 1985)). "If immunity exists, the public body and the employees simply are not liable." *Stagg*, 556 N.E.2d at 1343 (quoting *State, Dept. of Natural Resources v. Taylor,* 419 N.E.2d 819, 823 (Ind. Ct. App. 1981)). The degree of "culpability, and the nature of its tortious conduct, are not relevant considerations." *Id.*

The ITCA controls all claims brought against governmental entities and employees and provides in pertinent part:

> (c)  A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>
> (1) criminal;
> (2) clearly outside the scope of the employee's employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.

Ind. Code § 34-13-3-5(c). A plaintiff cannot merely allege wrongdoing in order to defeat the protections afforded under the ITCA but must assert a reasonable factual basis supporting any allegations of the aforementioned acts. *Higgason v. State*, 789 N.E. 2d 22, 30 (Ind. Ct. App. 2003). *See also* Ind. Code ch. 34-13-3. Extreme and outrageous behavior is not enough to overcome the immunity entitled to government employees. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 185-86 (Ind. Ct. App. 1999).

Although Plaintiff alleges that Hutchison acted maliciously and outside the scope of his employment, Plaintiff has not provided a reasonable factual basis to support these allegations. Plaintiff claims that "Hutchison contacted SWAT customers after the conclusion of [the] investigation for the sole purpose of providing them with misinformation." (Dkt. 92-11, p. 7.) However, this is unsupported by the facts. Hutchison contacted SWAT clients following the

summary suspension of SWAT's license. (Hutchison Dep. 25:15-16.) The Board summarily suspended SWAT's license for 90 days before a final adjudication in the administrative proceedings, as is permissible by statute. *See* Ind. Code § 25-1-11-13. Therefore, where a final adjudication had not been entered, the investigation was still ongoing. Hutchison was entitled to further investigate the allegations against SWAT. *See* Ind. Code § 25-1-7-2; Hutchison Dep. 5:11-15.

Additionally, there is no evidence that Hutchison acted with malice. Hutchison made his communications in reliance on the Board's finding that SWAT was a determined to be an immediate threat to public, health, safety and property. (Hutchison Dep. 25:15-26:9.) As the investigator of a pending administrative action, Hutchison acted within his discretion by reaching out to clients regarding the summary suspension of a security guard agency. Insofar as any state tort claims remain, State Defendants are immune pursuant to the ITCA.

## IV. Conclusion

WHEREFORE, Defendants respectfully request the Court enter summary judgment in their favor and grant them all other just and proper relief.

Respectfully Submitted,

CURTIS T. HILL, JR.,
Attorney General of Indiana
Attorney No.: 13999-20

By:   *s/ Mollie A. Slinker*
Mollie A. Slinker
Deputy Attorney General
Attorney No.:  34776-49

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

    Zachary Judson Eichel
    zach@einterzlaw.com

    Michael L. Einterz, Sr.
    mike@einterzlaw.com


By:   *s/ Mollie A. Slinker*
    Mollie A. Slinker
    Deputy Attorney General


OFFICE OF THE ATTORNEY GENERAL
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN   46204
Phone:  (317) 233-0878
Fax:    (317) 232-7979
Email:  Mollie.Slinker@atg.in.gov